UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SINGLE SOURCE, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. |
| v. ) | 08-40176-FDS |
| ) | |
| CENTRAL REGIONAL TOURISM ) | |
| DISTRICT, INC., ) | |
| ) | |
| Defendant. ) | |

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**SAYLOR, J.**

This is a civil action to recover late fees and damages on a contract between a professional photographer and a tourism agency involving the licensed use of photographs. Jurisdiction is based on diversity of citizenship.

Plaintiff Single Source, Inc., alleges that it entered into a contract with the Greater Hartford Tourism District ("GHTD") for the right to use certain professional photographs in promotional materials. The parties executed multiple documents over a period of several years detailing the terms of that arrangement. Single Source alleges that it is owed more than $600,000 in damages because various photographs were returned late and others were not returned at all.

After the execution of the contractual documents, the Connecticut legislature dissolved GHTD and created the Central Regional Tourism District, Inc. ("CRTD") in its stead. Single Source alleges that CRTD is responsible for the contract obligations of GHTD.

Defendant has moved for summary judgment on Counts 1 and 2 on the grounds that the contract was executed with GHTD, and that CRTD is not responsible for the debts of GHTD under Connecticut law. For the reasons stated below, the motion will be denied without prejudice and the parties will be directed to file further memoranda in anticipation of certifying one or more questions of law to the Connecticut Supreme Court.

## I. Background

The facts are set forth in the light most favorable to plaintiff, the non-moving party.

### A. The Dispute Concerning the Photographs

Single Source, Inc. is a supplier of professional photographs and photographic services based in Oxford, Massachusetts. GHTD was a state tourism district based in Hartford, Connecticut that promoted tourism in the Connecticut River valley area.

Single Source and GHTD executed several contracts from 1996 to 2001 that, in essence, granted GHTD a license to use certain photographic images owned by Single Source for a period of time. These contracts were often (but not always) accompanied by delivery contracts that contained "terms of delivery."[1] Although the language varied among the several delivery contracts, they all included provisions that required GHTD to return the images to Single Source after the relationship had ended. The delivery contracts also set out fees for which GHTD would be responsible if it delayed the return of the images or failed to return them altogether.

The contractual relationship between Single Source and GHTD ended on August 15, 2003. Single Source alleges that 159 photographs were never returned by GHTD, and that 1505

---

[1] The December 1998, January 2000, and November 2000 Renewal Agreements were not accompanied by any "Delivery Contracts."

photographs were returned on October 5, 2004, which (it alleges) was 59 weeks late. There is some evidence that CRTD used some of Single Source's images through April 2004. (McElholm Aff. at ¶ 5; Pl.'s Stat. Facts at ¶ 4, Ex. D).[2] Plaintiff has contacted CRTD on several occasions to recover the images that it lent to GHTD, without success.[3] Single Source seeks $237,000 from CRTD for the unreturned photographs and $443,975 in late fees.

### B. The August 2003 Reorganization

Prior to 2003, GHTD was one of eleven regional tourism districts in Connecticut. The districts were under the Office of Tourism within the state's Department of Economic and Community Development.

In August 2003, the Connecticut General Assembly reorganized the state agencies responsible for promoting tourism. 2003 Conn. Special Act 6 §§ 210, 215; (Moore Aff., Ex. 1 at ¶ 4). The legislature consolidated six arts and culture agencies, including the Office of Tourism, into a newly-created "successor agency," the Connecticut Commission on Culture and Tourism. Conn. Gen. Stat. § 10-392(d). Within this new Commission were established five regional tourism districts, which consolidated and replaced the eleven pre-existing tourism districts. Conn. Gen. Stat. § 10-397; (Moore Aff., Ex. 1 at ¶ 4). CRTD is one of these five tourism districts. As a matter of geographical coverage, it subsumed GHTD, as well as sections of several of the other former districts. *See* Conn. Gen. Stat. § 10-397; (Moore Aff., Ex. 1 at ¶ 4).

The Commission is charged with overseeing and promoting cooperation among the five

---

[2] CRTD denies ever using, copying, or printing any of Single Source's images. (Moore Aff. at ¶ 8; Def.'s Stat. Facts at ¶ 8).

[3] CRTD contends that plaintiff did not contact it until April 2006 to request return of the property. (Moore Aff. at ¶ 7).

regional tourism districts, including CRTD. Conn. Gen. Stat. § 10-396. Appointments to the board of directors of each regional tourism district are reported to the executive director of the Commission. *Id.* § 10-397(b). Each new regional tourism district is required to submit a proposed annual budget to the Commission, which must approve or disapprove each district's budget before funds may be expended. *Id.* §§ 10-394, 10-398. To standardize the budget review process, the Commission was charged with establishing a uniform financial reporting system to be used by each regional tourism district. *Id.* § 10-392(b)(7).

It appears that from August 2003 to the summer of 2004, CRTD was in a period of transition. There is some dispute as to when GHTD ceased to exist and when CRTD became operational. In an affidavit introduced in support of defendant's motion for summary judgment, Deborah Moore, a Board Member of CRTD, states that GHTD was dissolved and replaced by CRTD on August 20, 2003, the effective date of Conn. Gen. Stat. § 10-397. (Moore Aff., Ex. 1 at ¶ 4). In its Memorandum in Support of its Motion for Summary Judgment, however, defendant contends that GHTD was dissolved and replaced by CRTD on June 3, 2004. Plaintiff places the dissolution of GHTD later than August 2003, noting that it received a payment from GHTD dated November 17, 2003. (McElholm Aff. at ¶ 4). Further, plaintiff presents evidence from the Connecticut Secretary of State's Office showing that GHTD's name was changed to CRTD on December 15, 2003. (Pl. Stat. Facts, Ex. B).

CRTD is located at 31 Pratt Street, 4th Floor, Hartford, Connecticut, where GHTD was previously located. (Pl. Stat. Facts, Exs. D, E). CRTD has the same telephone and fax numbers

as did GHTD.  (*Id.*).[4]

### C. Connecticut Statutes Concerning "Successor" Agencies

As a general matter, Connecticut law provides for the transfer of existing obligations from one governmental agency to another as part of any governmental reorganization.  *See* Conn. Gen. Stat. § 4-38d(a) ("A department, institution, agency or authority to which functions, powers or duties are assigned or transferred under the provisions of any act of the General Assembly shall constitute a successor as to such matters . . ."). Connecticut law likewise provides that successor agencies "may" fulfill, "in the same manner and under the same terms and conditions and with the same effect," any "contract, right of action or matter" undertaken by the predecessor agency.  *Id.* § 4-38d(d). The statute also requires that predecessor agencies "deliver" to successor agencies "all contracts, books, maps, plans, papers, records and property pertaining to or used in connection with the functions, powers or duties so assigned or transferred." *Id.* § 4-38d(f).[5]

As noted, as part of the 2003 reorganization, section 10-392(d) designated the Commission as the "successor agency" to the Office of Tourism.  Conn. Gen. Stat. § 10-392(d). The Commission thus inherited the Office of Tourism's duties, functions, and powers.

### D. The 2004 Statute

In 2004, the legislature enacted Connecticut General Statute § 10-397a.  That statute provides, in relevant part:

---

[4] Plaintiff states in its memorandum that CRTD voluntarily assumed some of GHTD's liabilities, such as its lease, but does not cite to evidence in the record to support that contention.

[5] Subsection (f) thus appears to mandate the physical transfer of preexisting contracts from a predecessor agency to a successor agency, suggesting that the successor agency assume dominion over and responsibility for those contracts.  Where the successor agency occupies the same office space as the predecessor agency, such a physical transfer is presumably uncomplicated.  The record does not indicate whether GHTD delivered to CRTD all of its contracts, including those with plaintiff.

> (b) Any former tourism district having a cash surplus, after accounting for all liabilities, may distribute such surplus to the regional tourism district or districts serving the towns formerly served by such district. Any distribution shall be divided among the new district or districts in accordance with the following schedule:
>
> . . .
>
> (d) Any regional tourism district may, by a vote of its board of directors and with the approval of the commission, assume the liabilities of a former tourism district that served all or part of the area served by the new district. No such assumption shall be approved unless (1) the regional district's approved budget makes provision for the costs arising from the assumption of liability; and (2) the commission finds that the proposed assumption of liability is fair and equitable.

Conn. Gen. Stat. § 10-397a.

Section 10-397a became effective on June 3, 2004. Since that time, CRTD's board of directors has not voted to assume the liabilities of GHTD pursuant to the procedure outlined in the statute. (Moore Aff. at ¶ 6). It also has never included the cost for any of GHTD's liabilities in its budget. (*Id.*).

### E.   Procedural History

The complaint contains three counts: breach of contract for the lost photographs (Count 1); breach of contract to recover late fees (Count 2); and breach of contract for the improper use of certain images (Count 3). Defendant has moved for summary judgment on Counts 1 and 2. Defendant contends that CRTD is not liable for the debts of GHTD, as it did not assume those liabilities pursuant to Connecticut General Statute 10-397a.

## II.   Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and

6

that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "Essentially, Rule 56(c) mandates the entry of summary judgment 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Coll v. PB Diagnostic Sys.*, 50 F.3d 1115, 1121 (1st Cir. 1995) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). In making this determination, the Court views "the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." *Noonan v. Staples, Inc.*, 556 F.3d 20, 25 (1st Cir. 2009).

### III.  Analysis

CRTD contends that it is not responsible for the liabilities of its predecessor, GHTD. It submits that it did not inherit the liabilities of GHTD when the latter was dissolved. Pointing to the permissive language in section 10-397a(d), CRTD contends that the legislature did not provide for the transfer of liabilities from GHTD to CRTD but, instead, allowed for CRTD to voluntarily assume those liabilities if it so desired through a vote of its board of directors and the approval of the Commission. Conn. Gen. Stat. § 10-397a(d). CRTD maintains that because there has never been a vote by its board of directors to assume the liabilities of GHTD, and no finding that those liabilities are fair and equitable, any liabilities arising from the agreements between Single Source and GHTD are not CRTD's responsibility.

Single Source offers two arguments in opposition. First, it contends that CRTD is the successor to GHTD, based on the 2003 reorganization, and assumed its liabilities as a matter of law. In the alternative, it contends that if section 10-397a rendered GHTD incapable of fulfilling its contractual obligations, then the Connecticut General Assembly has improperly impaired a contractual relationship in violation of its constitutional rights. In Single Source's view, the state

law substantially impaired GHTD's contractual obligations with Single Source, in violation of the Contract Clause of the United States Constitution. *See* U.S. CONST. ART. I, § 10, cl. 1 ("No state shall . . . pass . . . any Law impairing the Obligation of Contracts . . .").[6]

This case thus poses the question of whether Connecticut's statutory scheme reorganizing its tourism office abrogated the contractual liabilities of a former tourism district, and, if so, whether it could do so without violating the Constitution.[7]

The principles of law governing review of legislation under the Contract Clause may be easily stated. "The threshold issue in Contract Clause analysis is whether the change in state law has operated as a substantial impairment of a contractual relationship." *Mercado-Boneta v. Administracion del Fondo de Compensacion Al Paciente*, 125 F.3d 9, 12-13 (1st Cir. 1997), quoting *General Motors Corp. v. Romein*, 503 U.S. 181 (1991) (internal quotations omitted). "This inquiry is broken down into three distinct parts: whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." *Id.* When a change in state law does substantially impair a contractual relationship, the law may nonetheless be upheld if it is "reasonable and necessary to an important public purpose." *Mercado-Boneta*, 125 F.3d at 13, quoting *United States Trust Co. of New York v. New*

---

[6] Single Source does not allege a takings claim under the Fifth and Fourteenth Amendments. *See, e.g.*, *Hawkeye Commodity Promotions, Inc. v. Vilsack*, 486 F.3d 430, 436-42 (8th Cir. 2007) (Iowa statute banning a lottery game does not violate Contract Clause or Takings Clause); *Picard v. Members of Emp. Retirement Bd. of Providence*, 275 F.3d 139, 144 (1st Cir. 2001) (city ordinance restricting pension benefit cost-of-living adjustments provided for in a collective bargaining agreement does not violate Contract Clause or Takings Clause); *Liberty Mut. Ins. Co. v. Whitehouse*, 868 F. Supp. 425, 429-34, 437 (D.R.I. 1994) (Rhode Island statute mandating increased cost-of-living adjustments for worker's compensation claimants does not violate Contract Clause or Takings Clause).

[7] On December 16, 2009, this Court certified to the Attorney General of Connecticut the fact that Single Source had challenged the constitutionality of Conn. Gen. Stat. § 10-397a. The Office of the Attorney General has not responded or intervened in this case.

*Jersey*, 431 U.S. 1 (1976). That inquiry "is more searching than the rational basis review employed in Due Process or Equal Protection analysis." *Id.* Furthermore, an impairment of a contract to which the state itself is a party is subject to "particular scrutiny" and "a more stringent examination." *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244 & n.15 (1978); *see McGrath v. Rhode Island Retirement Bd.*, 88 F.3d 12, 16 (1st Cir. 1996) ("when a state is itself a party to a contract, courts must scrutinize the state's asserted purpose [for impairing the contract] with an extra measure of vigilance").

The Contract Clause is not implicated, however, when state action brings about a breach of a contract rather than an impairment of a contractual obligation. *See TM Park Ave. Assocs. v. Pataki*, 214 F.3d 344, 348 (2d Cir. 2000) ("[A]n individual breach of contract . . . does not reach constitutional dimensions and create a cause of action based on the contracts clause."), quoting *Jackson Sawmill Co. v. United States*, 580 F.2d 302, 311-12 (8th Cir. 1978); *Horwitz Matthews, Inc. v. City of Chicago*, 78 F.3d 1248, 1251-52 (7th Cir. 1996); *Arriaga v. Members of the Bd. of Regents*, 825 F. Supp. 1, 5 (D. Mass. 1992). The distinction between mere breach and impermissible impairment "depends on the availability of a remedy in damages." *E & E Hauling, Inc. v. Forest Preserve Dist.*, 613 F.2d 675, 679 (7th Cir. 1980), citing *Hays v. Port of Seattle*, 251 U.S. 233, 237 (1920); *accord TM Park Ave. Assocs.*, 214 F.3d at 348; *but see Arriaga*, 825 F. Supp. at 6 (disagreeing with the "availability of remedies" test, and instead applying a "legitimate expectations" analysis). If a non-breaching party has a damages remedy in a suit against the state, a breach of contract has occurred, and no constitutional issue arises. *See, e.g.*, *TM Park Assocs.*, 214 F.3d at 349. If, on the other hand, the statute is an absolute defense to a breach of contract claim, then the legislation causes a substantial impairment of the state's contractual obligations. *Id.*

Here, CRTD appears to raise section 10-397a as an absolute defense to Single Source's breach of contract claim, suggesting that the statute impermissibly impairs the state's contractual liabilities. Indeed, CRTD's position is that as a result of the statutory reorganization, (1) GHTD no longer exists, (2) CRTD bears no responsibility for the liability, and therefore (3) plaintiff is without a remedy. Put another way, CRTD takes the position that the Connecticut legislature has effectively erased a contractual obligation of one of its agencies. On its face, that contention appears to present a serious constitutional issue.

The Court is mindful, however, that federal courts "ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable." *TM Park Ave. Assocs.*, 214 F.3d at 348, quoting *Spector Motor Serv. v. McLaughlin*, 323 U.S. 101, 105 (1944). Further, it is well-established that federal courts must construe statutes to avoid serious constitutional questions so long as that construction is not plainly contrary to legislative intent. *E.g.*, *Jones v. United States*, 529 U.S. 848, 857 (2000) ("[W]here a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter."); *Edward J. De Bartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575 (1988).

The question, then, is whether there is a reasonable construction of the statutory scheme that avoids the constitutional problem. That inquiry is complicated by the presence of a number of unanswered questions, both as to factual matters and as to Connecticut law .

One set of issues involves the 2003 reorganization, prior to the passage of section 10-397a. The breach of contract appears to have occurred, if at all, during August 2003. That same month, the Connecticut legislature reorganized the Office of Tourism and consolidated the regional

tourism districts from eleven to five districts. The 2003 reorganization statute made no special provision for the transfer of the contractual liabilities of the former districts. It might be reasonable, therefore, to conclude that in 2003 the liabilities of GHTD automatically transferred to CRTD as a "successor" agency under the general provisions of Conn. Gen. Stat. § 4-38d. But there are two potential problems with that interpretation. First, the same statute indicates that a successor agency "may" fulfill, "in the same manner and under the same terms and conditions and with the same effect," any contract undertaken by the predecessor agency, which suggests that the transfer of contractual obligations was not in fact automatic. *See* Conn. Gen. Stat. § 4-38d(d). Second, in 2004, the legislature enacted the statute in dispute here, permitting the new districts to assume the liabilities of the old districts if they so chose. Furthermore, before such a liability may be assumed, its cost must be incorporated into the regional district's approved budget, and the Commission must find that the "proposed assumption of liability is fair and equitable." Conn. Gen. Stat. § 10-397a(d). That permissive language would appear to be meaningless if the liabilities shifted by operation of law, regardless of any action taken by the successor board.[8]

Another set of issues stems from the fact that the "liability" at issue here is a contingent liability, the very existence of which is disputed. It is unclear when an alleged breach of contract (which is a contingent liability) becomes a "liability" within the meaning of section 10-397a. For example, GHTD was required to "account[] for" its liabilities in order to determine whether it had a cash surplus, as part of the winding up of its affairs. Conn. Gen. Stat. § 10-397a(b). One possible interpretation is that GHTD was required either to pay those liabilities or reserve (that is,

---

[8] Complicating matters further is the fact that the actual date on which GHTD ceased to exist is a matter of some dispute, although it is not clear whether resolution of that issue would affect the outcome of the case.

leave behind) sufficient assets to pay any then-existing liabilities.[9] It is unclear how as a matter of law (or accounting) GHTD should have "account[ed] for" a contingent liability that was apparently in dispute at the time, or what should be done if the amount reserved was insufficient. Nor is it clear that CRTD's failure to assume the contingent liability is necessarily dispositive, as there may not yet be any "liability" within the meaning of the statute to assume.

In any event, CRTD argues that under any scenario the obligation, whatever it was, remained with GHTD. But if that is true, it raises another set of issues. Whether this matter involves a simple breach of contract or a violation of the Constitution may turn on whether the statutory scheme stripped plaintiff of any remedy. If CRTD is not responsible for payment of the obligation, and if GHTD no longer exists, presumably the only potential source of remedy is the state of Connecticut.

But the state of Connecticut is not a party to this action, and indeed appears to be immune from suit in this Court under the Eleventh Amendment. CRTD does not contend that it is an arm of the state (and accordingly has not raised an Eleventh Amendment defense). Rather, CRTD appears to be a corporation—albeit one that is created by statute, funded by the state, and accountable to a state agency. *See* Conn. Gen. Stat. §§ 10-394, -398. The record does not reflect whether GHTD was also a state-created corporation, or whether it was an arm of the state. If it was the former, it is unclear how plaintiff would have a remedy of any kind for money damages

---

[9] As noted, the statute provides that "after [a former tourism district] account[s] for all liabilities," it "may distribute" its cash surplus to the new regional tourism districts serving the towns formerly served by the old district. Conn. Gen. Stat. § 10-397a(b). It then spells out the percentage distribution that may be transferred from the old districts to the new. *Id.* However, subsection (c) of the statute appears to permit transfer of non-cash assets to the new regional tourism districts, without restriction. *Compare* Conn. Gen. Stat. § 10-397a(b) *and* § 10-397a(c).

against the state for the unpaid obligations of GHTD. If it was the latter, plaintiff may have a remedy, but only after obtaining authorization from the state claims commissioner.[10]

In summary, this matter appears to present a substantial issue of federal constitutional law, unless a reasonable interpretation of Connecticut law would permit the Court to avoid the constitutional issue. Any such interpretation would be best performed by that state's highest court, rather than by a federal district judge sitting in a different state. It therefore appears to the Court that this case is an appropriate candidate for certification of one or more legal questions to the Connecticut Supreme Court pursuant to Conn. Gen. Stat. § 51-199b. Rather than certify any questions at this time, the Court will give the parties an opportunity to file further memoranda as to the precise question(s) to be certified. In order to ensure that the issues are appropriately framed, the Court will also direct the parties to address the questions of whether further factual development of the record is necessary and whether any other legal issue should be addressed prior to or in connection with the certification. Under the circumstances, defendant's motion for summary judgment will be denied without prejudice to its renewal at a later time.

## IV. Conclusion

For the foregoing reasons,

1. the motion of defendant Central Regional Tourism District, Inc., for summary judgment

---

[10] In a suit seeking only damages relief, sovereign immunity would protect Connecticut from suit unless the state has expressly waived that immunity by statute. *See Columbia Air Servs., Inc. v. Dep't of Transp.*, 977 A.2d 636, 643 (Conn. 2009). However, the Supreme Court of Connecticut has recently acknowledged that Conn. Gen. Stat. § 4-61(a) "is the sole Connecticut statute that expressly waives sovereign immunity for an action arising out of a contract with the state." *Id.* at 644. Section 4-61(a) only applies to contracts with the Department of Public Works, so is inapposite. Absent an express waiver of sovereign immunity, a plaintiff can still bring a breach of contract suit for damages against a state entity after obtaining authorization from the state claims commissioner. *Id.* Conn. Gen. Stat. § 4-160(a) provides the standard by which the claims commissioner determines whether a party is entitled to sue the state for damages.

is DENIED without prejudice to its renewal; and

    2. the parties are directed to file supplemental memoranda addressing the following issues:

    a. the subject matter and form of any question(s) to be certified to the Connecticut Supreme Court under Conn. Gen. Stat. § 51-199b;

    b. whether any additional development of the factual record in connection with such a certification is appropriate; and

    c. whether any other legal issue should be addressed prior to, or in connection with, any such certification.

Such memoranda shall be filed on or before October 30, 2010, and any responsive memoranda shall be filed on or before November 13, 2010.

**So Ordered.**

                                    /s/ F. Dennis Saylor  
                                    F. Dennis Saylor IV  
                                    United States District Judge

Dated: September 30, 2010